# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**February 28, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

IN RE: A.N.G. and A.B.G., minors

No. 24-ICA-248     (Cir. Ct. Kanawha Cnty. Case No. CC-20-2023-CIGR-32)

## MEMORANDUM DECISION

Petitioners Tracy M. and Priscilla M.[1] ("Grandparents") appeal the Circuit Court of Kanawha County's May 21, 2024, order denying their petition for permanent guardianship of their two minor grandchildren. Respondent Elizabeth D., ("Mother") responded in support of the circuit court's decision. Respondent James G., ("Father") did not participate in the appeal. The guardian ad litem filed a summary response opposing the circuit court's decision.[2] Grandparents filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the circuit court's decision. For the reasons stated below, this case is remanded with directions to the circuit court to enter a new order with sufficient findings of fact and conclusions of law.

Grandparents are the paternal step-grandfather and biological grandmother of two minor children, A.N.G., born in 2015 and A.B.G., born in 2018. The children's parents (collectively "Parents") were married in 2017 but divorced by order entered on October 24, 2019, due to alleged domestic violence by Father against Mother. Pursuant to the final divorce order, Mother was named as the children's primary residential parent and Father was given shared parenting and decision-making; however, the children had lived with Grandparents for almost six years when Grandparents filed their petition for guardianship.

The events leading to this appeal began when Grandparents filed a petition seeking a domestic violence protection order ("DVPO") against Mother on the children's behalf,

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Grandparents are represented by Lori M. Waller, Esq. (Timothy S. Litten, Esq., was substituted as counsel after briefing.) Mother is represented by Tim C. Carrico, Esq. The Guardian ad litem is Jennifer R. Victor, Esq.

1

alleging that Mother took them to live with a convicted sex offender, Adam S., who was convicted of child pornography charges in 2012.[3] The Kanawha County Magistrate Court entered an ex parte emergency DVPO, temporarily giving Grandparents sole custody of the children. The final DVPO hearing was held before the family court on July 6, 2023. The family court dismissed the DVPO, finding that the allegations did not constitute domestic violence, and finding the matter "to be more of custodial matters/grandparents rights." However, the family court ordered that Mother was "not allowed to have the children around Adam S. until the Child Protective Service investigation [was] completed."

On the same day, on July 6, 2023, Grandparents filed a petition for guardianship of both children in the family court. By order entered July 11, 2023, the case was removed to the circuit court due to allegations of abuse, pursuant to Rule 48 of the Rules of Practice and Procedure for Family Court.[4]

On July 26, 2023, during a hearing conducted remotely via Microsoft Teams, the circuit court appointed Grandparents as temporary guardians of the children, ordered Parents to undergo forensic and psychological evaluations, granted Mother weekend visitation with the children, and granted Father supervised visitation with the children to be arranged by Grandparents. By order entered on October 19, 2023, the circuit court appointed a guardian ad litem ("GAL") for the children. During a hearing on January 18, 2024, the circuit court admitted into evidence a picture drawn by A.N.G. depicting herself in heaven away from her parents.

The final hearing was held on March 21, 2024. At that hearing, the West Virginia Department of Human Services ("DHS") recommended that the children be returned to Parents with ninety days of support services to assist them. However, the GAL recommended that Grandparents' petition for permanent guardianship be granted with Parents receiving daytime visits. The final order was entered on May 21, 2024, wherein the following findings of fact were made:

---

[3] Adam S. served nineteen months in prison, followed by 10 years of supervised release. He was also required to register as a sex offender and attend therapy. The victims of the offense for which he was convicted were minors between the ages of five through nine.

[4] Rule 48 states the following:

If a family court has reasonable cause to suspect any minor child involved in family court proceedings has been abused or neglected, that family court shall immediately report the suspected abuse or neglect to the state child protective services agency, pursuant to W. Va. Code §§ 49-6A-2, and the circuit court.

1. Grandparents have cared for the children since birth and acted as their primary caregivers since 2019, including meeting their school, medical, therapy, and extra-curricular activity needs.
2. Mother paid for the youngest child's preschool, gave Grandparents money from time to time, purchased school supply items, and paid for clothing, dance lessons, and birthday supplies, as well as provided medical insurance.
3. Mother and Father visited the children sporadically from 2019-present. Mother visited every ten to fourteen days.
4. The children still view Parents as their parents.
5. Mother began a romantic relationship with Adam S. in 2008. In 2009, he was arrested and charged with child pornography. Mother's relationship ended with Adam S. in 2012 when he was convicted. After Parents divorced in 2019, Mother again became involved with (and eventually engaged to) Adam S., with plans to move in with him with the children. Mother and Adam S. purchased a vehicle together and the children were around him multiple times. The two allegedly broke up in July of 2023, but still are co-owners of the vehicle.
6. The children underwent forensic interviews on July 5, 2023. Neither disclosed abuse nor neglect.
7. Mother served 12 years in the Army as military police, and was employed as an emergency medical technician ("EMT") in 2021 until she suffered a broken back. She now works as a hostess and waitress and maintains adequate housing.
8. Father maintains employment and housing and has a girlfriend.
9. Mother submitted to a psychological evaluation on October 25, 2023. The report indicated a "guarded prognosis for the reliable attainment of minimally adequate parenting." Mother was diagnosed with anxiety disorder, depressive disorder, and parent-child relational problems.
10. Father submitted to a psychological evaluation on October 25, 2023. The report indicated a "highly guarded prognosis for the reliable attainment of minimally adequate parenting" and recommended a treatment plan.
11. The DHS confirmed that both parents were compliant with all previously ordered services.

The circuit court made the following conclusions of law:

1. Grandparents failed to prove by clear and convincing evidence that either parent abandoned the children.
2. Grandparents failed to prove that either parent abused the children.
3. Mother exercised poor judgment by exposing the children to Adam S. but her behavior was not intentional.
4. Grandparents failed to prove by clear and convincing evidence that a guardianship was warranted.

3

5. There are no extraordinary circumstances that would result in serious detriment to the children with the denial of the guardianship petition.
6. Parents have continued with services successfully for approximately six months.
7. It is in the children's best interest to return to Parents with a 90-day safety plan in place.

Upon the denial of their guardianship petition, Grandparents filed a motion for stay in the circuit court on May 21, 2024, wherein they requested that they maintain temporary guardianship and physical custody of the children pending the appellate process, or in the alternative, until the end of the school year. By order entered on May 24, 2024, the motion for stay was granted through the end of the school year.

Grandparents appealed to this Court on June 17, 2024, and filed a motion for stay on July 22, 2024, wherein they alleged that Parents resumed custody of the children on the last day of school, May 30, 2024. Shortly thereafter, Parents cut out all contact between Grandparents and the children. It is from the May 21, 2024, order denying their petition for permanent guardianship that Grandparents now appeal.

The Supreme Court of Appeals of West Virginia ("SCAWV") has stated that regarding petitions for guardianship, the following standard of review should be applied:

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

*Kimberly M. v. D.L.*, No. 20-0181, 2021 WL 365286, at * 2 (W. Va. Feb. 2, 2021) (memorandum decision).

> The exercise of discretion by a trial court in awarding custody of a minor child will not be disturbed on appeal unless that discretion has been abused; however, where the trial court's ruling does not reflect a discretionary decision but is based upon an erroneous application of the law and is clearly wrong, the ruling will be reversed on appeal.

*Id.* (citations omitted).

On appeal, Grandparents raise two related assignments of error, which we will consolidate. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (allowing consolidation of related assignments of error).

4

First, Grandparents assert that they demonstrated by clear and convincing evidence that there were extraordinary circumstances that warranted a permanent legal guardianship of the children under West Virginia Code § 44-10-3(f) (2013).[5] Second, they assert that the circuit court failed to consider the risk of harm to the children and did not rule in their best interest. In support of their arguments, they contend that they raised the children for nearly six years while Parents not only made poor personal decisions, but also put the children in harm's way and that the circuit court erroneously decided that "extraordinary circumstances" under West Virginia Code § 44-10-3(f)(5) were not present. Grandparents further argue that, although biological parents have a constitutional right to rear their children, the primary goal should be the children's health and welfare, which was not met in the circuit court's ruling.

Mother, in contrast, argued that neither child disclosed abuse or neglect, she contributed financially for the children, the DHS recommended that the children be placed with Parents after nine total months of receiving services, and that it was in the children's best interest to remain with Parents.

The GAL submitted a summary response arguing that the circuit court abused its discretion because it failed to afford sufficient weight to the clear and convincing evidence presented by Grandparents that the children would face serious detriment if placed with Parents. In support of her arguments, the GAL stated that both children have special needs for which Grandparents sought and obtained treatment and services to assist them. Additionally, she contended that Mother seemed oblivious to the dangers in which she placed the children, particularly with the older child having autism spectrum disorder, Father's sexual assault conviction, and Mother's desired relationship with Adam S.

Upon our review, we conclude that the circuit court's factual finding that Grandparents "failed to prove by clear and convincing evidence that [. . .] Mother *intentionally* exposed the children" to Adam S. was clear error. The record reflects that

---

[5] West Virginia Code § 44-10-3(f) addresses the appointment of minor guardianships and states the following:

The court may appoint a guardian for a minor if the court finds by clear and convincing evidence that the appointment is in the minor's best interest and:
(1) The parents consent;
(2) The parents' rights have been previously terminated;
(3) The parents are unwilling or unable to exercise their parental rights;
(4) The parents have abandoned their rights by a material failure to exercise them for a period of more than six months; or
(5) There are extraordinary circumstances that would, in all reasonable likelihood, result in serious detriment to the child if the petition is denied.

Mother began a romantic relationship with Adam S. in 2008. In 2009, Adam S. was arrested on child pornography charges and Mother did not end their relationship until he was convicted in 2012. Upon Adam S.'s release from incarceration, Mother again rekindled her romantic relationship with Adam S. in which they purchased a vehicle together, became engaged, and were making plans for Mother and the children to move in with Adam S. Additionally, Mother admitted to leaving the children alone with Adam S., and A.N.G. drew a picture of herself and A.B.G. in the bathtub reflecting Mother taking pictures of her and sending them to Adam S. Based upon these facts, we find that the circuit court abused its discretion in determining that Mother did not intentionally put the children in harm's way by exposing them to Adam S. In making this determination, we note that "[a]lthough parents have substantial rights that must be protected, the primary goal . . . in all family law matters . . . must be the health and welfare of the children." Syl. Pt. 3, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996). Further, "[c]ases involving children must be decided not just in the context of competing sets of adults' rights, but also with a regard for the rights of the child(ren)." Syl. Pt. 3, *Brooke B. v. Ray*, 230 W. Va. 355, 738 S.E.2d 21 (2013) (quoting Syl. Pt, 7, *In re Brian D.,* 194 W. Va. 623, 461 S.E.2d 129 (1995)).

Therefore, we remand to the circuit court for a new order that removes this erroneous finding. In light of this correction, we also direct the circuit court to include in its new order, additional analysis regarding the best interest of the children and whether extraordinary circumstances existed pursuant to West Virginia Code § 44-10-3(f). [6]

Accordingly, we order that the May 21, 2024, order be vacated, and this matter remanded for further proceedings consistent with this decision. We further direct that the custody order currently in place be converted to a temporary custody order that shall remain in place until such time as a new order is entered by the family court below, which incorporates the instructions and directions of this Court. The Clerk is directed to issue the mandate contemporaneously with this memorandum decision.

Remanded, with Directions.

**ISSUED:** February 28, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[6] We recognize that it is entirely possible that the circuit court's conclusion will be unchanged upon remand and we will review any findings in a further final order on appeal with appropriate deference.